UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60250-CR-BLOOM/HUNT

18 U.S.C. § 1349
18 U.S.C. § 1040(a)(2)
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

RICHELLE HOLNESS,

Defendant.
_____/

FILED BY ___AT___ D.C.

Dec 27, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At times material to this Information:

A. The **Campaign**

1. From on or about April 16, 2019, through on or about October 31, 2020, defendant **RICHELLE HOLNESS** (hereinafter referred to as "**HOLNESS**") was the campaign treasurer for a candidate (hereinafter referred to as the "Candidate") seeking election to the Broward County Commission. The Broward County Commission is the governing body for Broward County, Florida, and it consists of nine persons who are elected to four-year terms.

2. As campaign treasurer, defendant **HOLNESS** was responsible for maintaining a bank account in which defendant **HOLNESS** would deposit funds solicited from campaign contributors and make expenditures on behalf of the campaign.

3. Expenditures are payments made by a campaign for the purpose of influencing the results of an election. Florida Statute, Section 106.011(10).

4.      During the course of the campaign, the Candidate would solicit donors to make contributions solely to be used to support his campaign, and not for other purposes.

5.      From on or about April 24, 2019, through on or about October 31, 2020, defendant **HOLNESS** and the Candidate were the sole signatories on the bank account (hereinafter referred to as the "Candidate's Campaign Account") authorized to pay expenditures on behalf of the Candidate. The deposits made and expenditures paid through the Candidate's Campaign Account were transmitted in interstate commerce via the interstate banking system.

6.      As the campaign treasurer designated by a candidate for the Broward County Commission, defendant **HOLNESS** was required to file regular reports with the Broward County Supervisor of Elections (hereinafter referred to as the "Campaign Treasurer Reports"). The Campaign Treasurer Reports were required to be filed on: the 10th day following the end of each calendar month from the time the campaign treasurer was appointed; on the 60th day immediately preceding the primary election; and biweekly on each Friday thereafter. The information provided on the Campaign Treasurer Reports was to accurately reflect the contributions received by the campaign and the expenditures paid by the campaign, including the date and name of any person or entity receiving an expenditure from the campaign and the purpose and amount of such expenditure.

7.      The Broward County Supervisor of Elections utilized VR Systems to manage their website, which candidates and campaign treasurers used to file their Campaign Treasurer's Reports, or Florida Form DS-DE 13s. Campaign Treasurer's Reports for candidates for the Broward County Commission were transmitted in interstate commerce as VR Systems utilized Amazon Web Services Cloud Services, whose servers were located outside the State of Florida.

8.  The Candidate operated a real estate business (hereinafter referred to as the "Real Estate Business") in Plantation, Florida. The property from which the Candidate's Real Estate Business operated was leased and required the monthly payment of a rental fee. Defendant **HOLNESS** worked for the Real Estate Business.

9.  Cash App is a mobile payment service that allows users to transfer money using a mobile phone app.

B.  **Pandemic Unemployment**

10. On March 13, 2020, the President declared the COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

11. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the Pandemic Unemployment Assistance (PUA) program, which provided unemployment benefits to individuals whose employment had been either lost or interrupted as a direct result of COVID-19.

12. The PUA program was administered by the various states, including the State of Florida, but its benefits, which in the State of Florida were called Reemployment Assistance, were funded by the federal government. In Florida, the Florida Department of Economic Opportunity (FDEO) administered the PUA program.

13. In Florida, a PUA claim was made online via the PUA website, https://pua.benefits.uc.gov. The applicant entered personal identification information, including name, social security number, email address, telephone number, and a physical address. An applicant also answered a series of questions that enabled the FDEO to determine the applicant's eligibility and payment amount, including whether the applicant was unemployed for reasons related to the COVID-19 pandemic.

14. If FDEO approved an application for PUA benefits, the benefits recipient received benefits in the form of checks, electronic fund transfers, or debit cards. The checks and debit cards were mailed to the physical address that appeared on the application.

15. The recipient of PUA benefits received a unique Personal Identification Number (PIN) to access the PUA portal each week to certify their unemployment status. Payments for PUA were based on a seven-day period, from Sunday through Saturday. The benefits recipient certified every seven days whether he or she was still unemployed as a direct result of COVID-19 and whether he or she worked or earned any money during the seven-day period, among other certifications.

## COUNT 1
## Conspiracy to Commit Wire Fraud
## (18 U.S.C. § 1349)

1. Paragraphs 1 through 9 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2. From on or about April 16, 2019, through on or about October 31, 2020, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**RICHELLE HOLNESS,**

did willfully, that is, with the intent to further the objective of the conspiracy, and knowingly combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in

interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### **PURPOSE AND OBJECTIVE OF THE CONSPIRACY**

3. It was the purpose and objective of the conspiracy for the defendant to unlawfully enrich herself with the assistance of her co-conspirators through diverting campaign funds from the Candidate's Campaign Account to defendant **HOLNESS'** personal use and for other illegal purposes.

### **MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which defendant **HOLNESS** and her co-conspirators sought to accomplish the purpose and objective of the conspiracy included, among others, the following:

4. From in or about August 2019, through in or about October 2020, defendant **HOLNESS** issued checks to individuals and co-conspirators from the Candidate's Campaign Account.

5. The memo entry of each check falsely stated that the checks were issued for consulting, printing, data processing services, or some other service that would make it appear as if the expenditure was made by the campaign for the lawful purpose of influencing the results of an election.

6. Defendant **HOLNESS** directed the recipients of the checks to cash the checks and return all or almost all of the funds to defendant **HOLNESS**, by various means, including by Cash App or by issuing a check or cashier's check to pay the rent on the lease of the Candidate's real estate business. The funds returned to defendant **HOLNESS** by Cash App were used to pay the personal expenses of defendant **HOLNESS**, such as liquor, fast food, airline tickets, and clothing, and not for the lawful purpose of influencing the results of an election.

7. From in or about September 2019 through in or about November 2020, defendant **HOLNESS** caused Campaign Treasurer Reports to be electronically filed with the Broward County Supervisor of Elections that falsely reflected that the checks drawn on the Candidate's Campaign Account were issued for consulting, printing, data processing services, or some other lawful purpose of influencing the results of an election.

8. From in or about August 2019, through in or about October 2020, defendant **HOLNESS** diverted campaign funds for her personal use, the personal use of her coconspirators, or to pay the rent on the lease of the Candidate's Real Estate Business.

## OVERT ACTS

9. In furtherance of the conspiracy and to achieve the objective thereof, the defendant committed and caused to be committed in the Southern District of Florida and elsewhere, the following act, among others:

10. On or about August 25, 2019, defendant **HOLNESS** issued a check, in the amount of $5,000 from the Candidate's Campaign Account payable to a coconspirator's company ("Co-conspirator 1"), and defendant **HOLNESS** directed Co-conspirator 1 to cash said check and return the proceeds to defendant **HOLNESS**.

11. On or about August 26, 2019, defendant **HOLNESS** issued a check in the amount of $1,000 from the Candidate's Campaign Account payable to Co-conspirator 1, and directed Coconspirator 1 to cash said check and return the proceeds to defendant **HOLNESS**.

12. On or about September 10, 2019, defendant **HOLNESS** caused to be electronically filed a Campaign Treasurer's Report that falsely listed the purpose of a $6,000 expenditure paid to Co-conspirator 1 as paid for "consulting."

13. On or about October 27, 2019, defendant **HOLNESS** issued a check for $3,700 from the Candidate's Campaign Account payable to a coconspirator ("Co-conspirator 2"). Defendant **HOLNESS** directed that Co-conspirator 2 utilize $3,100 to pay the monthly rent on the Real Estate Lease and to return $550 by CashApp to defendant **HOLNESS**.

14. On or about October 30, 2019, Co-conspirator 2 paid the monthly rent on the Real Estate Lease as directed by defendant **HOLNESS** after obtaining a cashier's check for $3,100.

15. On or about October 31, 2019, Co-conspirator 2 sent $550 by CashApp to defendant **HOLNESS**.

16. On or about November 12, 2019, defendant **HOLNESS** caused to be electronically filed a Campaign Treasurer's Report that falsely listed the purpose of a $3,700 expenditure paid to Co-conspirator 2 as paid for "consulting."

17. On or about November 15, 2019, defendant **HOLNESS** issued a check for $650 from the Candidate's Campaign Account payable to Co-conspirator 1. Defendant **HOLNESS** directed that Co-conspirator 1 cash and return $600 by CashApp to defendant **HOLNESS**.

18. On or about November 15, 2019, Co-conspirator 1 sent $600 by CashApp to defendant **HOLNESS**.

19. On or about January 11, 2020, defendant **HOLNESS** caused to be electronically filed a Campaign Treasurer's Report that falsely listed the purpose of a $650 expenditure paid to Co-conspirator 1 as paid for "consulting."

20. On or about November 25, 2019, defendant **HOLNESS** issued a check for $4,000 from the Candidate's Campaign Account payable to an individual and directed the individual to endorse said check. After the individual endorsed the check, defendant **HOLNESS** cashed the check made out to the individual and retained the entire $4,000.

21. On or about December 10, 2019, defendant **HOLNESS** caused to be electronically filed a Campaign Treasurer's Report that falsely listed the purpose of a $4,000 expenditure paid to the individual as paid for "data processing services."

22. On or about February 20, 2020, defendant **HOLNESS** issued a check for $1,500 from the Candidate's Campaign Account payable to a co-conspirator ("Co-conspirator 3").

23. On or about February 21, 2020, Co-conspirator 3 sent $1,425 by CashApp to defendant **HOLNESS**.

24. On or about March 10, 2020, defendant **HOLNESS** caused to be electronically filed a Campaign Treasurer's Report that falsely listed the purpose of a $1,500 expenditure paid to Co-conspirator 3 as paid for "printing."

25. On or about May 6, 2020, defendant **HOLNESS** issued a check for $500 from the Candidate's Campaign Account payable to Co-conspirator 3.

26. On or about May 7, 2020, Co-conspirator 3 sent $500 by CashApp to defendant **HOLNESS**.

27. On or about June 9, 2020, defendant **HOLNESS** caused to be electronically filed a Campaign Treasurer's Report that falsely listed the purpose of a $500 expenditure paid to Co-conspirator 3 as paid for "consulting."

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Fraud In Connection With Emergency Benefits
### (18 U.S.C. § 1040(a)(2))

1. Paragraphs 10 through 15 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2. From on or about May 3, 2020, through on or about August 31, 2021, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**RICHELLE HOLNESS,**

did knowingly make materially false, fictitious, and fraudulent statements and representations in PUA claim applications filed in the name of defendant **HOLNESS**, in connection with benefits provided by the United States, which were authorized and paid in connection with a major disaster declaration and an emergency declaration under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, that is, that defendant **HOLNESS** was unemployed as a direct result of COVID-19 and that defendant **HOLNESS** did not work or earn any money, and as a result, a voucher, payment, money and thing of value was paid to defendant **HOLNESS** through the Department of Labor, an agency of the United States.

All in violation of Title 18, United States Code, Section 1040(a)(2).

**FORFEITURE ALLEGATIONS**

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **RICHELLE HOLNESS**, has an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

*Thomas J Mulshill*
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

*[signature]*
JEFFREY KAPLAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

RICHELLE HOLNESS,

_____/
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☐ Miami    ☐ Key West    ☐ FTP
☒ FTL      ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: English

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)
   I    ☒ 0 to  5 days                ☐ Petty
   II   ☐ 6 to 10 days                ☐ Minor
   III  ☐ 11 to 20 days               ☐ Misdemeanor
   IV   ☐ 21 to 60 days               ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
JEFFREY KAPLAN
Assistant United States Attorney
Court ID No.   5500030

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **RICHELLE HOLNESS**

**Case No:** _____

Counts #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Penalty:** 30 years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 5 years
* **Max. Fine:** greater of twice the gross gain or twice the gross loss or $250,000

Counts #: 2

Fraud in Connection with Emergency Benefits

Title 18, United States Code, Section 1040(a)(2)
* **Max. Penalty:** 30 years' imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 5 years
* **Max. Fine:** greater of twice the gross gain or twice the gross loss or $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>RICHELLE HOLNESS,<br>*Defendant* | Case No. 23-60250-CR-BLOOM/HUNT |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

United States Magistrate Judge
*Judge's printed name and title*